IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHERRIE BAILEY, )
)
Plaintiff, )
)
v. )
) Cause No. 09-CV-531 KBM-DJS
**I-FLOW CORPORATION**, a Delaware )
Corporation; **DJO, LLC**, a Delaware )
Corporation; and **DJO, INC.**, f/k/a **DJ** )
**ORTHOPEDICS, INC.**, a Delaware )
corporation, )
)
Defendants. )

## MOTION TO DISMISS CLAIMS OF CIVIL CONSPIRACY

Defendant, I-Flow Corporation, Inc. ("I-Flow"), through its attorneys, Civerolo, Gralow, Hill & Curtis, pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss portions of Plaintiff's Amended Complaint. Specifically, I-Flow moves to dismiss Plaintiff's claim of Civil Conspiracy between Defendant I-Flow and the DJO defendants ("DJO"). In support, I-Flow states as follows:

### INTRODUCTION

Plaintiff's Amended Complaint contains three paragraphs which allege a civil conspiracy existed between DJO and I-Flow. These three paragraphs do not plead with requisite specificity under Fed. R. Civ. P. 12(b)(6) and *Twombly's* heightened pleading standard. Additionally, the civil conspiracy claim in Plaintiff's Amended Complaint fails to allege any illegal act by Defendants, any intent to specifically harm the Plaintiff, or any violation of FDA regulations or federal law. Under federal pleading standards and New Mexico law, the third claim for relief in Plaintiff's Amended Complaint should be dismissed with prejudice.

## STATEMENT OF THE CASE

On May 29, 2009, the Plaintiff filed a Complaint in the United States District Court for the District of New Mexico alleging strict products liability and negligence against all above-captioned defendants (except DJO) and included a claim for punitive damages against I-Flow relating to a right shoulder surgery taking place on March 1, 2005 during which time Plaintiff's surgeon placed the catheter of a continuous infusion therapy pump into her shoulder. (Doc. 1). Plaintiff claims the administration of local anesthetic via the continuous infusion therapy pump led to a diagnosis of chondrolysis in April of 2009. *Id.* On February 1, 2010, the Court stayed these proceedings pending a decision by the United Stated Judicial Panel on Multidistrict Litigation. (Doc. 67). The Court lifted the stay on April 30, 2010 pursuant to motion of the parties. (Doc. 74). Plaintiff subsequently filed an Amended Complaint and Jury Demand on May 13, 2010 adding DJO, LLC and DJO, Inc. f/k/a DJO Orthopedics, Inc. ("DJO") as defendants and adding a three-paragraph claim of "civil conspiracy" against I-Flow and DJO. (Doc. 80). I-Flow moves to dismiss Plaintiff's "civil conspiracy" claim with prejudice for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Under the heightened pleading standard adopted by the Supreme Court in *Bell Atlantic v. Twombly*, Plaintiff's Amended Complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," to withstand the Rule 12(b)(6) analysis. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With a motion to dismiss filed under Rule 12(b)(6), the Court is required to accept as true all well-pleaded facts alleged in the complaint and view them

in the light most favorable to the nonmoving party. *Singh v. Mem'l Med. Cntr., Inc.*, 536 F. Supp. 2d 1244,1248 (D.N.M. 2008) citing *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006). While this standard does not require detailed factual allegations, the Court found that the claim must contain more than mere "labels and conclusions" and that a "formulaic recitation of the elements of a cause of action" will not meet this pleading standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Under the *Bell Atlantic* standard, the plaintiff's claim must not just be possible under some set of facts, but rather the plaintiff must provide enough facts, taken as true, to establish that his claim is plausible. *Bell,* 127 S.Ct. at 1965; *see also, Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007) ("the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.")

Consequently, Plaintiff is required to plead specific facts suggesting "facial plausibility" that Plaintiff will succeed in proving her civil conspiracy claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570. A claim has "facial plausibility" when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Significantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009).

A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Seeds v. Lucero,* 137 N.M. 589, 593, 113 P.3d 859 (N.M. App. 2005). An action for civil conspiracy requires: "(1) that a

conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the Plaintiff was damaged as a result of such acts." *Ettenson v. Burke*, 130 N.M. 67, 72, 17 P.3d 440, 443 (Ct. App. 2000). "[A] civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability." *Friedlander v. Davis & Pierce*, 2009 WL 1330059 * 6 (D.N.M. 2009); *Armijo v. National Sur. Corp.*, 58 N.M. 166, 178, 268 P.2d 339, 347 (1954). "A civil conspiracy must actually involve an independent, unlawful act that causes harm – something that would give rise to a civil action on its own." *Id.* citing *Ettenson v. Burke*, 130 N.M. 67, 72, 17 P.3d 440, 443 (Ct. App. 2000).

For a conspiracy to exist there must be a common design or a mutually implied understanding; an agreement. *First National Bank of Dodge City, Kansas v. Perschbacher*, 335 F.2d 442 (10th Cir. 1964); *Hedrick v. Perry*, 102 F.2d 802 (10th Cir. 1939); *State v. Deaton*, 74 N.M. 87, 390 P.2d 966 (1964); *State v. Farris*, 81 N.M. 589, 470 P.2d 561 (Ct.App. 1970). A conspiracy may be established by circumstantial evidence; generally, the agreement is a matter of inference from the facts and circumstances, including the acts of the persons alleged to be conspirators.

## LEGAL ARGUMENT

Plaintiff fails to satisfy the *Bell Atlantic* pleading standard because the Amended Complaint does not allege facts suggesting that I-Flow and DJO reached a "common design or mutual implied understanding," that I-Flow and DJO agreed to do anything that was contrary to federal law, or that a causal relationship exists between the purported illegal act and the particular injury allegedly sustained by Plaintiff. (Doc. 80, ¶¶19-21). Because Plaintiff fails to

allege specific facts to support the elements of a civil conspiracy, Plaintiff's third claim for relief should be dismissed.

### A. Plaintiff's Amended Complaint fails to adequately plead the elements of civil conspiracy because it does not make the existence of a civil conspiracy "facially plausible."

First, Plaintiff fails to allege facts supporting the conclusion that I-Flow and DJO reached an agreement or a "common design or mutual implied understanding." Plaintiff's conspiracy claim contains nothing more than conclusory allegations of an agreement unsupported by any facts. Further, Plaintiff's allegations simply accuse I-Flow and DJO of parallel conduct without any evidence of a common design or mutual implied understanding.

The Supreme Court has specifically addressed whether allegations suggesting that two defendants had engaged in "parallel conduct" could support the inference that a civil conspiracy claim was "facially plausible" and thus sufficiently pleaded to survive a 12(b)(6) motion. In addressing the required alleged factual content necessary to support the existence of the "meeting of the minds" element, the Court stated:

> [t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.' A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'

*Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557 (internal citations omitted).

Where, as here, Plaintiff fails to allege *specific factual content* suggesting "facial plausibility" that defendants reached a "meeting of the minds" to engage in a specific course of illegal conduct, a civil conspiracy claim fails to meet the rigorous pleading requirements adopted

by the Supreme Court in *Bell Atlantic Corp. v. Twombly* and held to be applicable to "all civil claims" in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1941 (2009).

While Plaintiff alleges that I-Flow and DJO "entered into an agreement . . . to promote pain pumps for orthopedic use," she does not state facts making this conclusory allegation "facially plausible" – for example, by identifying the exact content of the alleged agreement or even specific allegations about which particular medical professionals the pain pumps were promoted to specifically for orthopedic use. In her motion to amend the Complaint, Plaintiff cited only to communications between DJO and its regulatory consultant. (Doc. 43, ¶26). Plaintiff did not allege that I-Flow knew that "regulatory consultants advised that orthopedic use was not permitted." Now, in the Amended Complaint Plaintiff has added "I-Flow" to this allegation in an attempt to cure the defect in the proposed pleading and create a conspiracy claim via rote recitation of the law. Plaintiff offers no evidence from which such knowledge can be inferred.

### B. Plaintiff's conclusory allegations that Defendants violated FDA regulations do not meet the pleading standards under Rule 12(b)(6) and *Twombly*.

Plaintiff sets forth nothing more than conclusory allegations that defendants violated FDA regulations and federal law. (Doc. 80, ¶19). The Amended Complaint is devoid of references to what FDA regulations and federal law defendants purportedly violated and Plaintiff cites no evidence supportive of such a violation.

Finally, Plaintiff fails to allege any facts supporting the conclusion that defendants' alleged conduct caused or contributed to Plaintiff's injuries. (Doc. 80, ¶¶19-21). Plaintiff does not allege that her treating physician ever read any materials produced or distributed by either I-Flow or DJO or that such materials even existed at the time of Plaintiff's surgery. Because no

act in furtherance of the alleged agreement could conceivably have even contributed to Plaintiff's injuries, I-Flow cannot be held jointly liable with DJO for such injuries.

For these reasons, Plaintiff's civil conspiracy claims against I-Flow should not survive this Rule 12(b)(6) motion. Plaintiff's civil conspiracy claim should be dismissed for failure to state a claim upon which relief may be granted.

### C. Plaintiff's Amended Complaint fails because it does not allege that the purported conspiracy was in place to injure the Plaintiff or formed for an illegal purpose.

Here, the only "agreement" alleged in the Amended Complaint is the purported "agreement ... to promote pain pumps for orthopedic use, including use in the joint space." (Doc. 80, ¶19). The allegation that I-Flow actively promoted the intra-articular use of pain pumps in shoulders, however, is unfounded – demonstrated by Plaintiff's failure to point to any evidence whatsoever that suggests the same.[1] Nor does Plaintiff point to any evidence of the existence of an agreement between DJO and I-Flow to promote the intra-articular use of continuous infusion therapy pumps in shoulders. To the contrary, the record indicates that I-Flow and DJO never agreed to promote the intra-articular use of continuous infusion therapy pumps and never did in fact promote such use.

The evidence cited to support a claim of civil conspiracy consists of: (1) letters from a regulatory consultant hired by DJO <u>to DJO only</u> opining that promotion of pain pumps for orthopedic use is not permitted; and (2) handwritten notes of Patti Gerke <u>of DJO</u> regarding a meeting between DJO personnel and its regulatory consultant only. Plaintiff makes much of the fact that FDA consultants hired by DJO concluded that the promotion of orthopedic use of pain pumps "could" be seen as a violation of FDA regulations. These documents, however, do not

---

[1] Plaintiff's counsel has already received and reviewed extensive discovery based on their role as counsel in pain pump litigation in other jurisdictions.

7

support of "meeting of minds" between DJO and I-Flow as they relate only to information exchanged between DJO and its regulatory consultant. Moreover, these documents do not support Plaintiff's allegation that I-Flow entered an agreement with DJO to "promote" orthopedic use of pain pumps in shoulders. Indeed, Plaintiff points to absolutely no evidence that DJO ever shared the opinion of its regulatory consultant or the cited letters from DJO's regulatory consultant with I-Flow. Thus, there is no evidence of a conspiracy.

Significantly, DJO expressed concern to the president of I-Flow that I-Flow pain pumps could not be "marketed for orthopedic applications." In response to this letter, I-Flow acknowledged that it would violate FDA regulations to "actively promote its pumps explicitly for use in orthopedic or any other specific type of surgery," and refuted that I-Flow had ever represented that the promotion of pain pumps for this specific use was permitted. I-Flow's counsel explained:

> "[t]he difference between FDA's authorization to sell the PainBuster for use for postoperative pain management, on the one hand, and promotion of the device for the specific type of surgery, including orthopedic surgery, on the other hand, was made clear during discussions with DonJoy following FDA's clearance of 510(k) number K980558. Thus, DonJoy fully understood that it could lawfully sell the PainBuster to orthopedic surgeons . . . but that it could not lawfully promote the PainBuster specifically for us in pain management following orthopedic surgery."

(October 29, 1999 Letter from I-Flow's Counsel to DJO's Counsel, p. 2-3).[2] Far from suggesting that I-Flow and DJO "enter[ed] into an agreement, purpose, and design to promote pain pumps for orthopedic use," the letter from I-Flow's president to DJO's president evidences just the opposite -- both I-Flow and DJO understood that though the pumps could be used intra-articularly at the surgeons' discretion, I-Flow and DJO could not actively promote the pumps for intra-articular use. They did not agree to promote the pumps for this use, but rather, agreed that they could not do so.

---

[2] A copy of this letter will be produced in discovery upon the request of the parties or the Court.

8

While not binding authority, the decision in *Dean v. DJO, LLC, et al.*[3] is instructive and analogous. There, plaintiff filed suit alleging negligence and strict products liability arising from the post-operative use of a continuous infusion therapy device in her shoulder. In her complaint, plaintiff included a count under the theory of civil conspiracy against I-Flow, the pump manufacturer, and DJO, the distributor. DJO moved to dismiss the civil conspiracy count.

The court granted DJO's motion to dismiss because the plaintiff did "not allege that the purpose of DJO's and I-Flow's agreement was to cause harm." *Id.* at 3. "While Plaintiff's allegations might allege conspiracy between DJO and I-Flow to violate FDA regulations, they do not allege a civil conspiracy that was intended to cause harm or injury to the plaintiff or others similarly situated." *Id.* at 3-4.

As in New Mexico, Oregon defines civil conspiracy as "'a combination of two or more persons' who through 'concerted action,' intend to accomplish an unlawful purpose." Ex. A, at p. 2) *citing Osborne v. Fadden*, 225 Or. App. 431, 437, 201 P.3d 278 (1009). Also as in New Mexico, "a claim for civil conspiracy 'is not a separate tort or basis for recovery.'" *Id. citing Osborne* 225 Or. App. at 437.

Here, any purported agreement between I-Flow and DJO was not "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Seeds v. Lucero*, 137 N.M. 589, 593, 113 P.3d 859 (N.M. App. 2005). Plaintiff has simply claimed that I-Flow and DJO "entered in to an agreement…to promote pain pumps," for purposes of "making a profit." (Doc. 80 ¶19). This is not a sufficient basis for a claim of civil conspiracy and because of this Plaintiff's third claim for relief should be dismissed.

---

[3] *Dean v. DJO, LLC, DJO, Inc., and I-Flow Corporation*, United States District Court for the District of Oregon (Case No. 6:09-cv-01193-AA, Doc. # 64) (Ex. A)

9

## CONCLUSION

Because Plaintiff's Amended Complaint does not plead "civil conspiracy" with the requisite specificity under *Twombly*, because the Defendants did not do anything contrary to federal law, and because the alleged conspiracy between I-Flow and DJO did not involve the violation of any laws or the intent to cause injury to the Plaintiff, the third claim for relief in Plaintiff's Amended Complaint should be dismissed under Rule 12(b)(6).

WHEREFORE, Defendant, I-Flow Corporation, respectfully requests that this Court dismiss the third claim for relief in Plaintiff's Amended Complaint, with prejudice, and any other relief it deems just.

CIVEROLO, GRALOW, HILL & CURTIS
A Professional Association

By: _____
Robert J. Curtis, Esq.
*Attorneys for Defendant I-Flow Corporation*

P. O. Drawer 887
Albuquerque, New Mexico 87103
(505) 842-8255

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2010, the foregoing was filed electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

_____
Robert J. Curtis, Esq.