IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHERRIE BAILEY,

       Plaintiff,

v.                                    No. 09-CV-0531 KBM/DJS

I-FLOW CORPORATION, a Delaware
corporation; DJO, LLC; a Delaware
corporation; and DJO, INC., f/k/a DJ
ORTHOPEDICS, INC.; a Delaware
corporation,

       Defendants.

## DEFENDANT DJO, INC'S MEMORANDUM AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**COMES NOW,** Defendant DJO, Inc, f/k/a DJ Orthopedics ("DJO Incorporated") by and through its counsel of record, Madison, Harbour & Mroz, P.A., and hereby files its memorandum and motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As discussed in detail below, the only claim in Plaintiff's Amended Complaint against DJO Incorporated appears to be an unsupported and unspecific allegation of engaging in a civil conspiracy with I-Flow Corporation. The claim lacks any of the requisite specificity required by federal pleading standards and New Mexico law and fails to allege what illegal act DJO Incorporated allegedly engaged in to support the civil conspiracy claim, fails to allege that DJO Incorporated had any intent to specifically harm the Plaintiff, and fails to state that DJO Incorporated violated any specific FDA regulation or federal law. Because Plaintiff's claims against DJO Incorporated lack the requisite specificity and fail to meet the pleading standard, the claims against DJO Incorporated should be dismissed with prejudice.

1

## I. INTRODUCTION

Plaintiff filed her Amended Complaint for Damages on May 13, 2010 alleging personal injuries arising from the March 1, 2005 post-surgical placement of an I-Flow pain pump into her shoulder joint space by her orthopedic surgeon. Plaintiff seeks damages from I-Flow Corporation, DJO Incorporated and DJO, LLC[1] based upon claims for (1) Strict Liability, Design Defect and Failure to Warn; (2) Negligence, (3) Civil Conspiracy; and (4) Punitive Damages, yet her Amended Complaint lacks any specificity as to theories of liability she seeks to hold DJO Incorporated (or DJO, LLC) accountable for regarding her alleged injuries and damages. DJO Incorporated assumes that Plaintiff's entire case against it is predicated upon the theory that a civil conspiracy existed between I-Flow and the DJO entities. Specifically, Plaintiff seeks to hold DJO Incorporated strictly liable and negligent for a injuries allegedly caused by an I-Flow brand pain pump that was designed, manufactured, marketed, sold, and distributed by I-Flow by alleging that the DJO entities and I-Flow entered into an agreement with the purpose to design and promote pain pumps to orthopedic surgeons in violation for Federal law for profit. [Doc. 1, ¶¶ 19-21]. Yet, Plaintiff does not allege that DJO Incorporated designed, manufactured, marketed, or sold the I-Flow pain pump. Further, Plaintiff does not allege that DJO, Incorporated (or DJO, LLC, a former distributor for I-Flow), distributed the I-Flow pain pump that Plaintiff claims caused her injuries. To the extent that Plaintiff's claims rest on a theory of civil conspiracy, Plaintiff's Amended Complaint fails to meet the most basic pleading

---

[1] Plaintiff has also raised claims the same against DJO Incorporated as it has against DJO, LLC and the latter party filed its own Motion to Dismiss [Doc. 95] on July 1, 2010. The two motions could have been combined and filed jointly, but Plaintiff initially agreed to voluntarily dismiss DJO Incorporated, but then opted not to do so after DJO, LLC had already filed its Motion to Dismiss.

requirements to assert a claim for civil conspiracy under New Mexico law. If Plaintiff seeks to hold DJO Incorporated directly liable under theories of strict liability, defective design, failure to warn, and negligence, Plaintiff's Amended Complaint fails to meet the fundamental pleading requirements necessary to assert such claims. Should the Court find that Plaintiff's allegation of civil conspiracy against DJO Incorporated fail to meet the requisite pleading standards, then Plaintiff's entire case fails as there are no other supportable claims raised. Moreover, Plaintiff's claims are time barred by the statute of limitations and should be dismissed on this basis alone.

## II.   RELEVANT ALLEGATIONS

Plaintiff pleads that on March 1, 2005 she underwent an arthroscopic surgery of her shoulder and an "I-Flow brand 'pain pump'" was implanted post-surgically by her orthopedic surgeon. [Doc. 1, ¶ 5]. Plaintiff pleads that the I-Flow pain pump was designed, manufactured and sold by I-Flow with the intention that the device would deliver continuous doses of pain relief medication directly into the shoulder joint space. [Doc. 1, ¶¶ 5-6]. Plaintiff alleges that after the I-Flow pain pump was implanted, she received does of continuously injected medication into her right shoulder joint resulting in a condition called chondrolysis. [Doc. 1, ¶ 7]. Plaintiff then offers the conclusory allegations that the Plaintiff's surgeons used the pain pump in the manner instructed and directed by I-Flow and DJO Incorporated [Doc. 1, ¶ 11].

Plaintiff pleads that the pain pump was designed, manufactured, marketed, sold, and distributed by I-Flow. [Doc. 1, ¶¶ 3, 5, 6, 16]. Although making repeated references to "Defendants' pain pump", [Doc. 1, ¶¶ 11(H), 12, 14], Plaintiff does not plead that DJO Incorporated designed, manufactured, marketed, sold, or distributed the I-Flow pain pump implanted in Plaintiff's shoulder, simply because such allegations would be completely false.

3

Instead of alleging specific factual grounds in support of her claims, Plaintiff makes conclusory allegations that "I-Flow and DJO entered into an agreement to promote the pain pumps for orthopedic use, in violation of FDA regulations, DJO and I-Flow agreed that if apprehended, they would claim that orthopedic use was included within the general use permitted by the agency – despite the fact that regulatory consultants advised that orthopedic use was not permitted. I-Flow and DJO defendants acted with a common goal of selling pain pumps to orthopedic surgeons, for orthopedic/intra-articular/synovial cavity use and making a profit from those sales, despite the fact that promoting pain pumps for orthopedic use was contrary to federal law." [Doc. 1, ¶ 19]. Plaintiff further concludes, without any factual support for the allegation, that "DJO gave substantial assistance and encouragement to I-Flow, which allowed it to continue its unlawful sales of pain pumps even after DJO ceased being its distributor." [Doc. 1, ¶ 20].

## III. ARGUMENT

### A. Authority for Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief. Fed. Rule Civ. Pro. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true. *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991). The United States Supreme Court recently addressed federal pleading standards in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *In Twombly,* the Supreme Court rejected the "no set of facts" standard previously adhered to under *Conley v. Gibson*, 355 U.S. 41, 78) (1957). The Supreme Court clarified that under Fed. Rule Civ. Pro. 8(a), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

4

570. The allegations of the complaint must be more than conceivable, they must rise to the level of plausible to meet the pleading standards of Rule 8(a). *Id.* Under the heightened pleading standard adopted in *Twombly* and explicitly held to be applicable to "all civil actions" in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1941 (2009) to withstand a Rule 12(b)(6) motion, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

The *Twombly* pleading standard requires a plaintiff to plead specific facts suggesting "facial plausibility" that plaintiff will succeed in proving her claim. *Id.* at 570. A claim has "facial plausibility" when "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Meanwhile, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

In line with *Twombly*, the Tenth Circuit has further stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Robbins v. Oklahoma, et. al.*, 519 F.3d 1242, 1248 (2008). In the context of a complaint involving more than one actor, it is essential that the complaint "make clear exactly *who* is alleged to have done *what* to *whom*..." *Id.* 519 F.3d 1250. It is plaintiff's burden to make clear the grounds upon which the plaintiff is entitled to relief. *Id.*

The pleading in this case is a clear example of the type of allegations rejected by the *Twombly* court and the Tenth Circuit in *Robbins*, requiring that Plaintiff's Amended Complaint be dismissed against DJO Incorporated for failure to state a claim upon which relief can be granted.

5

### B. Plaintiff's Complaint Fails to Allege Essential Elements of a Claim for Civil Conspiracy.

Civil conspiracy is not itself actionable; it must be accompanied by a civil action against one of the conspirators. *Valles v. Silverman,* 2004-NMCA-019, 27, 84 P.3d 1056. The purpose of a civil conspiracy claim is to "impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." *Seeds v. Lucero,* 2005-NMCA-067, ¶ 12, 113 P.3d 859, 862.

"To constitute an actionable civil conspiracy, there must be a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Las Luminarias v. Isengard,* 92 N.M. 297, 300, 597 P.2d 444 (Ct. App. 1978). To state a cause of action for civil conspiracy, the complaint must allege: (1) that a conspiracy between two or more individuals existed; (2) that specific wrongful act or acts were carried out by the defendants pursuant to the conspiracy; and (3) that plaintiff was damaged as a result of such acts. *Silva v. Town of Springer,* 1996-NMCA-022, ¶25, 912 P.2d 304, 310. "The existence of the conspiracy must be pled either by direct allegations or by allegations of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred." *Isengard,* 92 N.M. at 300, 587 P. 2d at ___ (citing 16 Am. Jur. 2d Conspiracy § 58 (1964)).

#### 1. Plaintiff's Amended Complaint Fails to Allege Facts Supporting the Conclusion that DJO Incorporated's Alleged Tortious Conduct Caused Plaintiff's Injuries.

"In a civil conspiracy, the basis for relief does not arise from the fact of the conspiracy itself, but from any damages which are shown to have resulted from the acts committed pursuant to the conspiracy." *Silva,* ¶ 25, 912 P.2d at 311-12. As with any tort claim, Plaintiff bears the

burden of proving that DJO Incorporated's alleged tortious act caused the harm or injury Plaintiff alleges in her complaint. *See* UJI 13-302B.

In this case, Plaintiff offers conclusory allegations that "DJO gave substantial assistance and encouragement to I-Flow, which allowed it to continue its unlawful sales of pain pumps even after DJO ceased being its distributor", but there is not a single allegation or factual averment offered in support of this conclusion. *Cf. Valles v. Silverman,* 2004-NMCA-019, 28, 84 P.3d 1056 (finding that plaintiff's complaint contained allegations sufficient to state a claim for civil conspiracy against Wal-Mart where the complaint alleged (1) that Wal-Mart, a non-party to an underlying lawsuit, conspired with named defendants to bring the underlying lawsuit, (2) that the improper purpose of the lawsuit was to intimidate, frighten, silence, and retaliate against plaintiffs, (3) that in furtherance of the conspiracy, Wal-Mart funded the underlying lawsuit, sanctioned, encouraged, and participated in the underlying lawsuit, and (4) that plaintiff was damaged as a result of the wrongful acts). Plaintiff does not offer any allegations to support that any overt act on the part of DJO Incorporated caused her injuries. Plaintiff does not allege that her surgeon ever read any materials produced or distributed by DJO Incorporated that promoted the I-Flow pain pump. Plaintiff does not allege that her surgeon ever had any contact whatsoever with DJO Incorporated. Instead, she offers conclusory allegations that her surgeon "used the pain pumps in the manner instructed and directed by 'defendants'". [Doc. 1, ¶ 11]. However, such allegations, applied by plaintiff against DJO Incorporated in conclusory fashion, are inconsistent with the allegation that I-Flow, not DJO Incorporated designed, manufactured, marketed, sold, and distributed the I-Flow pain pump. [Doc. 1, ¶¶ 3, 5, 6, 16]. Further, it belies common sense to conclude that any overt act of DJO Incorporated caused Plaintiff's injuries,

where Plaintiff's complaint does not even allege that DJO Incorporated was distributing the I-Flow pain pump the year of, or even the year preceding, Plaintiff's surgery.

Clearly, there is not a single factual allegation supporting the inference (1) DJO Incorporated marketed, promoted, or provided any information to users of the I-Flow pain pump; (2) that Plaintiff's surgeon relied on any representation or direction of DJO Incorporated concerning the I-Flow pain pump; or (3) that any overt act of DJO Incorporated caused Plaintiff's alleged injuries through the use of a pain pump, when Plaintiff does not allege DJO Incorporated designed, manufactured, marketed, sold, or distributed the pump. Because no act in furtherance of the alleged conspiracy could conceivably have contributed to Plaintiff's injury, DJO Incorporated cannot be held jointly liable with I-Flow under Plaintiff's civil conspiracy theory. Without any allegations that DJO Incorporated was in any way related to the pain pump that was used in Plaintiff's March 1, 2005 surgery, the causation element of civil conspiracy cannot be satisfied – much less the existence of the required element of "facial plausibility". Plaintiff's complaint simply fails to meet her burden to make clear the grounds upon which she is entitled to relief against DJO Incorporated  Thus, Plaintiff's civil conspiracy claims against DJO Incorporated cannot survive a 12(b)(6) motion, and must be dismissed.

### 2. At Least One Other Federal Court Has Found Allegations Identical to Plaintiff's Allegations In This Case Insufficient to State a Claim for Civil Conspiracy.

On October 08, 2009, plaintiff, Michelle Dean ("Dean"), filed an action in U.S. District Court for the District of Oregon, Eugene Division, against I-Flow Corporation, DJO, LLC, and DJO Incorporated alleging negligence, strict products liability, civil conspiracy, and punitive damages. The *Dean* case arose from the June 27, 2005 post-operative use of an I-Flow pain pump device implanted in Dean's shoulder joint. (*See* Cause No. 6:09-cv-01193-AA.) In *Dean*,

8

as in this case, the plaintiff alleged that I-Flow was liable as the manufacturer and distributor of the pain pump, and that DJO, LLC, a former distributor of the I-Flow pain pump, was jointly liable for I-Flow's conduct under a theory of civil conspiracy. Further, as in this case, Plaintiff alleged that I-Flow and the DJO entities "acted with a common goal of selling pain pumps to orthopedic surgeons…and making a profit from those sales, despite the fact that promoting pain pumps for orthopedic use was contrary to federal law. [*See* Doc. 1, ¶ 22]. Just like the instant matter, Dean alleged that "[b]ecause DJO entered into a civil conspiracy with I-Flow to unlawfully promote pain pumps as alleged above, DJO defendants are jointly liable to those harmed by I-Flow's conduct." [See Doc. 21]. In an order filed May 17, 2010, Chief United States District Judge Ann Aiken granted DJO, LLC's motion to dismiss pursuant to Rule 12(b)(6). [Case 6:09-cv-01193-AA, Doc. 64].[2]

In reaching its conclusion, Chief Judge Aiken noted that Plaintiff's complaint did not allege that the purpose of DJO's and I-Flow's alleged conspiracy was to cause harm or injury to another. Rather, Dean, as the Plaintiff in this case, alleged that the purpose of the alleged conspiracy was to continue "selling pain pumps" in order to make a "profit". Chief Judge Aiken reasoned that "[w]hile plaintiff's allegations might allege a conspiracy between DJO and I-Flow to violate FDA regulations, they do not allege a civil conspiracy that was intended to cause harm or injury to plaintiff or others similarly situated." [Case 6:09-cv-01193-AA, Doc. 64, p. 4].

Chief Judge Aiken's finding and reasoning that a complaint for civil conspiracy must allege that the purpose of the conspiracy is to cause harm or injury to another is entirely consistent with New Mexico State Court opinions addressing Rule 12(b)(6) motions challenging the sufficiency

---

[2] A true and accurate copy of the Chief Judge Aiken's Opinion and Order in Civ No. 09-1193-AA is attached hereto as **Exhibit A** for the court's convenience.

of allegations in cases alleging civil conspiracy. *See Las Luminarias v. Isengard,* 92 N.M. 297, 587 P.2d 444 (Ct. App. 1978) (complaint alleged that defendants collectively "conspired and combined" among each other and with others to prevent plaintiff from being awarded a contract); *Armijo v. National Sur. Corp.*, 58 N.M. 166, 258 P.2d 339 (1954) (discussing common law origin of civil conspiracy and recognizing that the complaint alleged that defendants conspired to defraud plaintiff); *Los Alamos National Bank v. Martinez Surveying Services, LLC*, 2006-NMCA-081, 139 P.3d 201 (involving a counter-claim where defendant alleged that plaintiff and others conspired to interfere with defendants' prospective contractual relations); *Seeds v. Lucero,* 2005-NMCA-067, 113 P.3d 859 (involving a complaint where plaintiffs sued city officials alleging that the defendant city officials conspired with prominent community members to cause personal and financial harm to plaintiffs' business); *Valles v. Silverman,* 2004-NMCA-019, 84 P.3d 1056 (denying Rule 12(b)(6) motion where complaint sufficiently alleged that defendants conspired to bring litigation against plaintiffs in retaliation for plaintiffs' petitioning activities involving in attempting to prevent the development of a shopping center near plaintiffs' neighborhood); *Ettenson v. Burke,* 2001-NMCA-003, 17 P.3d 440 (complaint alleged that defendants conspired to force plaintiff to waive a wrongful termination suit against his former employer); *and Silva v. Town of Springer*, 1996-NMSC-022, 912 P.2d 304 (involving a complaint alleging that city officials conspired to prevent plaintiffs from being reappointed to their government positions).

As have other federal courts dealing with the same inadequate and conclusory allegations unsupported by clear factual averments, this Court should, pursuant to Rule 12(b)(6), dismiss Plaintiff's claim for civil conspiracy against DJO Incorporated and the DJO entities as a whole.

### C. Plaintiff's Complaint Fails to Allege Facts Supporting that DJO Incorporated Owed A Duty to Plaintiff Requiring that Plaintiff's First and Second Claims Be Dismissed.

As set forth above, Plaintiff does not allege that DJO Incorporated designed, manufactured, marketed, sold, or distributed the I-Flow pain pump that Plaintiff alleges caused her injuries. Rather, Plaintiff alleges that I-Flow designed, manufactured, marketed, sold, and distributed the pain pump that Plaintiff alleges caused her injury. [Doc. 1, ¶¶ 3, 5, 6, 16]. While making an elusive reference to the DJO defendants being a distributor for I-Flow at some unknown point in time, [Doc. 1, ¶ 20], Plaintiff does not allege that DJO Incorporated was a distributor of the I-Flow pain pump in 2005, the year of Plaintiff's orthopedic shoulder surgery, or 2004, the year preceding Plaintiff's surgery.

DJO Incorporated cannot be liable to Plaintiff for claims of strict liability, design defect, failure to warn, or negligence, for a product that it did not design, manufacture, market, sell, or distribute. Simply put, DJO Incorporated does not owe Plaintiff a duty to ensure that another entity, in this case I-Flow, designed, manufactured, marketed, or distributed its product without defect and with sufficient warnings. Therefore, DJO Incorporated cannot be liable to Plaintiff based on the allegations of the first and second claims for relief.

While DJO Incorporated assumes that Plaintiff is only attempting to hold DJO Incorporated liable for her alleged injuries based upon a theory of civil conspiracy, Plaintiff's Amended Complaint is ambiguous in that her first and second claims for relief plead generally against all "Defendants". Due to this ambiguity, DJO Incorporated believes it is imperative to address the lack of allegations sufficient to support claims for strict liability, design defect, failure to warn, and negligence. For the reasons set forth above, Plaintiff's first and second claims against DJO Incorporated must be dismissed for failure to state a claim upon which relief can be granted.

### D. Plaintiff's Claims for Relief Against DJO Incorporated Are Barred By the Statute of Limitations.

The statute of limitations period for "injury to a person" is three years. NMSA 1978, § 37-1-8. The three year statute of limitations period begins to run from the time the cause of action accrues. NMSA 1978, § 37-1-1. A cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause. *Roberts v. Southwest Community Health Servs.*, 114 N.M. 248, 257, 837 P.2d 442 (1992).

Plaintiff's Amended Complaint and Jury Demand was filed on May 13, 2010. [Doc. 1]. Plaintiff's complaint alleges that an "I-Flow brand 'pain pump'" was implanted directly into her shoulder during a right shoulder surgery on March 1, 2005. [Doc. 1, ¶ 5]. Plaintiff alleges that the device worked on a continuous basis for up to 72 hours or more following the surgery. [Doc. 1, ¶ 5]. Plaintiff's complaint further alleges that Plaintiff "has permanently lost joint motion and use of her right shoulder and related muscles, tendons and cartilage" and that the "condition has existed since her initial surgery and will continue into the future…" [Doc. 1. ¶ 26]. On the facts as plead by Plaintiff, Plaintiff's cause of action begin to accrue, at the earliest, on the March 1, 2005, the date of her initial shoulder surgery, or at the latest, 72 hours after the March 1, 2005 shoulder surgery. Because Plaintiff's complaint was not brought within three years from March 2005, the statute of limitations bars any claims Plaintiff has brought or may have brought against DJO Incorporated

## IV. CONCLUSION

Plaintiff's claims against DJO Incorporated should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff's Amended Complaint falls well short of the pleading requirements and does not satisfy Plaintiff's burden to make clear

the grounds upon which she is entitled to relief against DJO Incorporated  Further, Plaintiff's claims against DJO Incorporated are barred by the statute of limitations.  For the foregoing reasons, Plaintiff's complaint against DJO Incorporated should be dismissed with prejudice.

**WHEREFORE**, Defendant DJO Incorporated, respectfully requests that the Court grant its motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for relief upon which relief can be granted, and great such further relief as the Court deems just and proper.

MADISON, HARBOUR, MROZ, P.A.

By *Jacqueline Olexy*
_____
Michael J. Dekleva
Jacqueline Olexy
Post Office Box 25467
Albuquerque, New Mexico  87125-5467
(505) 242-2177

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 19th day of July, 2010, I filed the foregoing electronically through the CM/ECF system, which caused the foregoing parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Turner Branch, Esq.
(Email address: tbranch@branchlawfirm.com)

Robert J. Curtis
(Email address: curtisr@civerolo.com )

Paul Dominguez, Esq.
(Email address: pdominguez@branchlawfirm.com)

**AND I FURTHER CERTIFY** that on this 19th day of June, 2010, I served the foregoing via first class mail, postage prepaid addressed as follows:

Turner Branch, Esq.
Paul Dominguez, Esq.
Branch Law Firm
2025 Rio Grande Blvd., N.W.
Albuquerque, NM 87104
*Attorneys for Plaintiff*

Robert J. Curtis
Civerolo, Gralow, Hill & Curtis, PA
PO Box 887
Albuquerque, NM 87103-0887
*Attorney for Defendant I-Flow Corporation*

*Jacqueline Olexy*
_____
Jacqueline Olexy

14