IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SHERRIE BAILEY,**

    **Plaintiff,**

vs.                                                                         **Cause No.  1:09-cv-531 WJ/DJS**

**I-FLOW CORP, a Delaware corporation, et al.,**

    **Defendants.**

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on *I-Flow's Motion to Join and Memorandum of Law Supporting Plaintiff's Unopposed Motion to File, Under Seal, Confidential Exhibits to Plaintiff's Response to I-Flow's Summary Judgment Motion* [Doc. 212], filed April 7, 2011 ("Motion to Seal"). For the reasons stated below, the motion is **GRANTED in part and DENIED in part**.

**I.**    **BACKGROUND**

Defendant I-Flow requests that certain exhibits Plaintiff intends to file in support of her opposition to summary judgment be sealed.  Plaintiff does not oppose the request and has submitted the documents for *in camera* inspection by the Court.  In discovery, I-Flow has designated the documents as "confidential" or "trade secret," or both.  The documents are purportedly covered by the Stipulated Qualified Protective Order [Doc. 59] the Court entered on January 19, 2010.  The Stipulated Qualified Protective Order limits disclosure of designated documents received during the course of discovery and requires any party wishing to file Confidential Discovery Material with the Court to request that they be filed under seal.  [Doc. 59, ¶¶ 2, 12.]

**II.**    **LEGAL STANDARD**

Court documents are covered by a common law right of access.  Nixon v. Warner Comm'cs, 435 U.S. 589, 599 (1978).  "Under that doctrine, judicial documents are presumptively available to

the public, but may be sealed if the right to access is outweighed by the interests favoring nondisclosure." United States v. McVeigh, 119 F.3d 806, 811 (10th Cir. 1997) (citing Nixon, 435 U.S. at 602). "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." Mann v. Boatright, 477 F.3d 1140, 1149 (10th Cir. 2007) (citation and quotation marks omitted).

The decision to seal documents or to allow public access is left to the sound discretion of the trial court, which must be exercised in light of the facts and circumstances of the particular case. Nixon, 435 U.S. at 599. The Tenth Circuit has approved a three-step process for evaluating a request to seal records. See Riker v. Fed. Bureau of Prisons, 315 F.App'x 752, 755 (10th Cir. 2009) (unpublished). The Court first considers the public's interest in the documents. Riker, 315 F.App'x at 755. The presumption favoring public access is strong where the documents are used to determine litigants' substantive legal rights, but weak where they "play only a negligible role in the performance of Article III duties." Riker, 315 F.App'x at 755 (citing Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006)). Next, the Court considers the competing interest advanced by the party seeking to seal the documents. Riker, 315 F.App'x at 755. Finally, the Court balances the two interests. Riker, 315 F.App'x at 755–56.

### III. ANALYSIS

#### A. The Public's Interest

I-Flow argues the public has no interest in the documents because they are not "relevant to the Court's determination of whether I-Flow knew or had reason to know an alleged risk of chondrolysis from use of its infusion pump prior to Plaintiff's March 2004 surgery." [Doc. 212 at 9.] According to I-Flow, the public interest is not triggered because most of the documents will not be relevant to summary judgment.

Whether the documents are relevant to summary judgment is a matter the District Judge will determine. However, Plaintiff presumably would not seek to offer the documents as exhibits if she did not believe they were relevant in some respect. Without deciding the ultimate relevance of the documents, the Court concludes after examining them that they are not unrelated to the issues in this case, and that they could be used in the performance of Article III duties. Accordingly, the presumption in favor of public access is at least moderate and arguably strong. Furthermore, although I-Flow contends that no court heretofore has denied its requests to file its internal confidential documents under seal in connection with continuous infusion pump litigation, this Court is obligated to undertake an independent analysis of the facts and circumstances of this case.

**B.     I-Flow's interest**

I-Flow asserts two grounds for sealing the documents: (1) confidentiality and (2) trade secret. I-Flow argues that each document "details confidential research, development, competitive strategies, proprietary, commercial, financial, scientific and/or technical information." [Doc. 212 at 8.] It further alleges it would suffer irreparable harm from the competitive disadvantage that would result from placing the documents in the public domain. [Id. at 10.] In addition to these arguments that apply generally, I-Flow has provided a rationale for each specific document.

**1.     Confidentiality**

The Court rejects I-Flow's generic assertion of "confidentiality" as a reason in this case to seal the documents. I-Flow has not identified any standard or objective definition by which the Court can determine whether a document is "confidential" and further, does not explain to the Court's satisfaction how the ill-defined designation overcomes the presumption of public access.

It is true that courts can refuse to permit their files to serve as sources of business information that might harm a litigant's competitive standing. Nixon, 435 U.S. at 598. However,

3

it is also true that a litigant's interest in simply preventing disclosure of embarrassing details is not enough to overcome the strong presumption in favor of public access.  See, e.g., Mann, 477 F.3d at 1148–49 (holding that litigant's privacy interest in preventing public disclosure of embarrassing personal information was not sufficiently critical to outweigh presumption in favor of public access).

Information regarding complaints, intended uses, restrictions, and contraindications associated with I-Flow's products is relevant to the legal issues in this case.  Absent a much stronger interest than I-Flow has articulated, this is not the type of information for which the Court will exercise its discretion to exclude the public.  The public's interest in this information is not a matter of gratifying mere idle curiosity.  The Court therefore finds that I-Flow's interest in preventing public disclosures of complaints about its products, its alleged handling of the complaints, or its subjective characterization of a document as "confidential" is not sufficient to overcome the presumption in favor of the public's right of access.

### 2.    Trade Secret

I-Flow also claims trade secret protection as a basis for sealing the documents.  A company's interest in preserving trade secrets may outweigh the public's interest in accessing the information. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 600 n.5 (1980) (Stewart, J., concurring); see also Gates Rubber Co. v. Bando Chem. Indus., Ltd, 9 F.3d 823, 849 (10th Cir. 1993) (approving filing under seal record containing trade secrets).

Under New Mexico law,[1]

> "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process, that;
>
> > (1) derives independent economic value, actual or potential, from not being

---

[1] The parties agree that New Mexico law applies.

>generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

>(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

NMSA 1978, §57-31-2.D (1989). Trade secret protection does not apply to all information a company does not wish to disclose, however, but is intended to protect "innovations" that may not be amenable to patent but that provide the owner with an advantage in the market. Cf. Russo v. Ballard Med. Prods., 550 F.3d 1004, 1011 (10th Cir. 2008).

### C. Balancing of interests as to each exhibit[2]

Because the Court rejects "confidentiality" as a basis for sealing exhibits in this case, whether to seal each exhibit will be determined by whether the Court finds it contains trade secret information. The Court agrees that information properly characterized as a trade secret may be shielded from public access. However, with some exceptions, most of the information I-Flow seeks to seal does not meet the definition of a trade secret.

I-Flow relies on the fact that the information contained in the documents is not available to the general public. Even where this is true, availability to the public is not the only element that defines a trade secret. A trade secret involves a "formula, pattern, compilation, program, device, method, technique or process." Though the information does not necessarily have to be technical or scientific in nature, inherent in the definition of "trade secret" is the notion that the information involves some element of invention that is worth guarding because it inures to the benefit of the owner. Merely because information, if publicly disclosed, would prove detrimental to I-Flow's

---

[2]The Motion to Seal refers to documents by exhibit number and also by unique document number. Exhibit numbers had been redacted from the documents delivered for *in camera* review. The Court refers to both exhibit and document number though the exhibit number may not reflect the actual exhibit number Plaintiff may assign when the documents are filed. Furthermore, the *in camera* package included several documents not addressed in the motion. The Court therefore does not discuss them.

competitive advantage does not mean it is a trade secret.  Thus, complaints I-Flow has received about its products as well as information about how I-Flow reacted to the complaints do not qualify for trade secret protection for purposes of sealing the record.  For the same reason, the Court rejects the proposition that a product's intended uses, restrictions, or contraindications constitutes a trade secret for purposes of sealing an exhibit.

With these standards in mind, the Court evaluates each exhibit below.

### 1. Documents IFLOW0021023 – IFLOW0021053 (Exhibit 96)

The document is described as "Sales Training Manual."  It includes a description of marketing activities, reimbursement programs, product processes, improvements and issues, sales, new products, and other information.  I-Flow states that it "contains trade secret and proprietary information related to sales training techniques and other marketing strategies not available to the general public."  [Doc. 212 at 2.]

Absence of a context for this document makes the Court's task difficult.  However, with respect to marketing, the activities it describes do not appear to be strategies or techniques, but rather reports on marketing activities that have already occurred. Moreover, the marketing activities are not "secret" but public in nature.  The Motion to Seal is therefore denied as to the title and agenda pages, and as to pages that describe marketing activities, specifically:  IFLOW0021023 – IFLOW0021026; IFLOW0021037 – IFLOW0021038; IFLOW0021042 – IFLOW0021045.

The remaining pages describe pricing, competition, sales, and product performance. Confidential data regarding operating and pricing policies can qualify as trade secrets.  Black, Sivals & Bryson, Inc. v. Keystone Steel Fabrication, Inc., 584 F.2d 946, 952 (10th Cir. 1978).  The Court concludes that the public's interest in accessing this information is outweighed by I-Flow's interest in nondisclosure.  The Motion to Seal is therefore granted as to IFLOW0021027 – IFLOW0021036;

IFLOW0021039 – IFLOW0021041; IFLOW0021046 – IFLOW0021053. The Court leaves to the parties to determine whether the exhibit can be effectively submitted in a redacted form, or whether it must be divided into separate sealed and unsealed exhibits.

### 2. Documents IFLOW30517 – IFLOW30518 (Exhibit 63)

The document is an email exchange between I-Flow and an individual at the FDA regarding clearance I-Flow has received for a particular product. I-Flow argues that it contains confidential information related to detailed product specifications. [Doc. 212 at 3.]

The Court does not agree that the email includes detailed product specifications. It describes restrictions or contraindications placed on the product and includes an inquiry as to how they may be removed. I-Flow's privacy interest in this information does not outweigh the public's interest. The Motion to Seal is denied as to Exhibit 63.

### 3. Documents IFLOW0020510 – IFLOW0020511 (Exhibit 104)

The document is an email exchange between I-Flow personnel regarding a complaint received about a product. I-Flow argues it should be sealed because it discusses proprietary and confidential handling procedures of recent complaints and competitive strategies not available to the general public. [Doc. 212 at 3.]

The Court does not agree the document describes procedures for handling complaints. Even if it did, I-Flow has not shown that a strategy for handling product complaints constitutes a trade secret. In any event, the email does not describe a novel or unique process that gives I-Flow a competitive advantage, such as might constitute a trade secret; it simply describes the complaint and states that the complaint will be investigated by gathering information and determining whether the product could have caused the condition. The Motion to Seal is denied as to Exhibit 104.

### 4. Documents IFLOW ESD 081072 – IFLOW ESD 081073 (Exhibit 106)

The document is an email exchange between I-Flow personnel describing in considerable detail a report from a physician whose patient developed chondrolysis. I-Flow claims the document should be sealed because it discusses proprietary and confidential handling procedures and competitive strategies. [Doc. 212 at 3.]

The Court does not agree that the email describes a "strategy." It is a description of a product complaint and efforts taken by entities other than I-Flow to investigate. The Motion to Seal is denied as to Exhibit 106.

### 5. Documents IFLOW ESD 084287 – IFLOW ESD 084288 (Exhibit 108)

The document includes an email exchange between I-Flow and an individual, apparently associated with a university, who is soliciting information about the use of I-Flow's products and describing a study he plans to undertake, and I-Flow's response to the inquiry. I-Flow claims it is protected because it describes how to handle the release of a technical bulletin. [Doc. 212 at 3.]

The Court does not agree that the email concerns a technical bulletin. It concerns an outside inquiry, passed along within I-Flow with minimal commentary. The Motion to Seal is denied as to Exhibit 108.

### 6. Document IFLOW ESD 096987 (Exhibit 111)

The email transmits internally within I-Flow a Technical Bulletin regarding the use of a particular I-Flow product. I-Flow argues the document should be sealed because it discusses how to handle release of the Technical Bulletin and involves proprietary, competitive decision-making strategy. [Doc. 212 at 4.]

The Court does not agree that the information contained in this email constitutes a trade secret. First, whether the Technical Bulletin ultimately was disseminated, the information it contains was not intended to be confidential. The email states the Technical Bulletin is the "final

version" and should be communicated to customers. Furthermore, the information it contains describes risks and warnings associated with the product; it cannot be characterized as a product innovation that gives I-Flow a competitive advantage. The Motion to Seal is denied as to Exhibit 111.

### 7.     Documents IFLOW ESD 096699 – IFLOW ESD 096700 (Exhibit 112)

The document is an email exchange between I-Flow and another entity, presumably a website developer, that describes updates made to I-Flow's website, including posting of the Technical Bulletin. I-Flow argues the document should be sealed because it discusses how to handle release of the Technical Bulletin and involves proprietary, competitive decision-making strategy. [Doc. 212 at 4.]

The Court does not agree that the decision whether or when to post a Technical Bulletin on I-Flow's website constitutes a trade secret. The Motion to Seal is denied as to Exhibit 112.

### 8.     Documents IFLOW ESD 148565 – IFLOW ESD 148567 (Exhibit 66)

The document is a "Contact Report" listing dates, times, and notes on telephone and email contacts with a particular doctor. The document is essentially a telephone and email log. I-Flow argues the document should be sealed because it discusses how to handle release of the Technical Bulletin and involves decision-making strategy not available to the general public. [Doc. 212 at 4.]

The Court does not agree either that the document concerns a Technical Bulletin or that contacts with a doctor constitutes a trade secret. The Motion to Seal is denied as to Exhibit 66.

### 9.     Documents IFLOW ESD 079092 – IFLOW ESD 079093 (Exhibit 105)

The document is an email exchange, apparently internal to I-Flow, which describes the condition of chondrolysis and how it may develop. It also includes an abstract of a technical paper on the issue of shoulder chondrolysis, and the response of I-Flow personnel to the information

contained in the paper. I-Flow argues the document should be sealed because company executives discuss how to handle release of the Technical Bulletin and involves decision-making strategy not available to the general public. [Doc. 212 at 4.]

The Court does not agree that the document concerns the Technical Bulletin. Furthermore, neither I-Flow's description of, or commentary on, a publicly discussed technical paper constitutes a trade secret. The commentary does not involve any manner of formula, pattern, compilation, program, device, method, technique or process unique to I-Flow that inures to I-Flow's economic benefit. The Motion to Seal is denied as to Exhibit 105.

### 10.     Documents IFLOW ESD 065223 – IFLOW ESD 065224 (Exhibit 109)

The document is an email exchange, apparently internal to I-Flow, which describes efforts by I-Flow to obtain information from an outside entity. I-Flow argues the document should be sealed because company executives discuss how to handle release of the Technical Bulletin and involves decision-making strategy not available to the general public. [Doc. 212 at 4–5.]

The Court does not agree either that the document concerns the Technical Bulletin or that basic efforts to obtain information by placing a telephone call constitutes a trade secret. It does not involve any manner of innovative formula, pattern, compilation, program, device, method, technique or process unique to I-Flow. The Motion to Seal is denied as to Exhibit 109.

### 11.     Documents IFLOW ESD 154455 – IFLOW ESD 154477 (Exhibit 36)

The document is a business plan, apparently in draft form. It describes I-Flow's product and marketing strategies, projected sales, and other business information. I-Flow argues it should be sealed because it contains information related to sales projections and marketing tactics. [Doc. 212 at 5.]

Data compilations regarding operating and pricing polices can qualify as trade secrets.

Black, Sivals & Bryson, Inc., 584 F.2d at 952.  The Court finds I-Flow's interest in maintaining the information private outweighs the public's interest in accessing it.  The Motion to Seal is granted as to Exhibit 36.

### 12.     Documents IFLOW0014123 – IFLOW0014146 (Exhibit 49)

The document is a comparison by element, in table form, of various products.  I-Flow argues the document should be sealed because it contains proprietary information related to detailed product specifications unique to I-Flow.  [Doc. 212 at 5.]

The Court is skeptical of the claim.  The information contained in the table does not appear to be detailed product specifications so much as general comparison by element.  Furthermore, it is not clear that all the information contained in the table relates to I-Flow's products or that the information is not publicly available.

Nevertheless, in the interest of avoiding delay, the Court will provisionally grant the Motion to Seal as to Exhibit 49 contingent upon a more sufficient showing that the information should be protected.  The parties therefore may proceed to file Exhibit 49 under seal.  The Court will accept further briefing and/or additional information to enable it to determine whether the exhibit should remain sealed.  To aid the Court's determination, I-Flow may submit additional information to support its position no later than May 6, 2011.  If I-Flow elects not to submit additional information, or if the information is not persuasive, the Court will order the exhibit unsealed.

### 13.     Documents IFLOW0013585 – IFLOW0013586 (Exhibit 51)

The document is a letter from I-Flow to the Food and Drug Administration ("FDA").  It describes modifications in information I-Flow is submitting to the FDA.  I-Flow argues the document contains information related to detailed product specifications unique to I-Flow's products and marketing tactics.  [Doc. 212 at 5.]

11

The Court rejects this reasoning. First, the letter describes changes in the manner the device will be described—not changes in the design or operation of the device itself. Furthermore, the information it supplies about the device is information that is intended to be made public, e.g. indications for use and information that will be publicly posted. The Motion to Seal is denied as to Exhibit 51.

### 14.     Documents IFLOW30515 – IFLOW30516 (Exhibit 64)

The document consists of Meeting Minutes of a conference between I-Flow and the FDA. It lists the FDA's questions, concerns, and requirements. I-Flow argues the document should be sealed because company executives discuss how to handle release of the Technical Bulletin and because it involves decision-making strategy not available to the general public. [Doc. 212 at 5.]

The Court rejects this reasoning. The document does not refer to the Technical Bulletin. Furthermore, it describes FDA's response to an I-Flow product and FDA's decision-making processes, not I-Flow's. The Motion to Seal is denied as to Exhibit 64.

### 15.     Documents IFLOW30553 – IFLOW30556 (Exhibit 62)

The document consists of Meeting Minutes of a conference between I-Flow and the FDA. It describes correspondence between the FDA and I-Flow concerning an I-Flow product. It lists the FDA's questions, concerns, and requirements, and I-Flow's responses thereto. I-Flow argues the document should be sealed because it is related to detailed product specifications unique to I-Flow's products and marketing strategies. [Doc. 212 at 6.]

The Court rejects this reasoning. As with Exhibit 64, although it concerns an I-Flow product, Exhibit 62 reflects more upon FDA's processes and methods than I-Flow's processes. The Motion to Seal is denied as to Exhibit 62.

### 16.     Documents IFLOW0012052 – IFLOW0012055 (Exhibit 110)

The document is an email, internal to I-Flow, and includes an attachment that is apparently a Technical Bulletin in draft form. I-Flow argues the document should be sealed because it is related to detailed product specifications unique to I-Flow's product and not available to the general public. [Doc. 212 at 6.]

The Court rejects this reasoning. The information in the email and attachment cannot be described as "detailed product specifications." It describes warnings and complications potentially associated with the product and the bulletin itself is in a format apparently intended for public disclosure. The brief email commentary does not reflect any technical innovation by I-Flow, and the Court concludes it does not qualify as a trade secret. The Motion to Seal is denied as to Exhibit 110.

**IV.  CONCLUSION**

The Court begins with the presumption that judicial documents are available to the public. The Court rejects I-Flow's assertions of "confidentiality" as a basis for sealing exhibits in this case. The Court concludes that documents arguably containing trade secret information may be sealed, and finds that for purposes of sealing the record, I-Flow has satisfactorily established its interest in preventing disclosure of the following documents outweighs the public interest: **Documents IFLOW ESD 154455 – IFLOW ESD 154477 (Exhibit 36)**. The Motion to Seal is **GRANTED** as to this document.

I-Flow has satisfactorily established its interest in preventing disclosure of portions of the following document outweighs the public interest: **Documents IFLOW0021023 – IFLOW0021053 (Exhibit 96)**. The Motion to Seal is **GRANTED in part and DENIED in part** as to this document as described in Section III.C.1. above.

Further information is necessary to make a determination regarding **Documents**

13

**IFLOW0014123 – IFLOW0014146 (Exhibit 49)**.  The Motion to Seal is **provisionally granted** as to this document, as described in Section III.C.12 above**,** with a final determination contingent upon a persuasive showing from I-Flow.

I-Flow has not established that its interests outweigh the public's interest with respect to the following documents:

**Documents IFLOW30517 – IFLOW30518 (Exhibit 63)**

**Documents IFLOW0020510 – IFLOW0020511 (Exhibit 104)**

**Documents IFLOW ESD 081072 – IFLOW ESD 081073 (Exhibit 106)**

**Documents IFLOW ESD 084287 – IFLOW ESD 084288 (Exhibit 108)**

**Document IFLOW ESD 096987 (Exhibit 111)**

**Documents IFLOW ESD 096699 – IFLOW ESD 096700 (Exhibit 112)**

**Documents IFLOW ESD 148565 – IFLOW ESD 148567 (Exhibit 66)**

**Documents IFLOW ESD 079092 – IFLOW ESD 079093 (Exhibit 105)**

**Documents IFLOW ESD 065223 – IFLOW ESD 065224 (Exhibit 109)**

**Documents IFLOW0013585 – IFLOW0013586 (Exhibit 51)**

**Documents IFLOW30515 – IFLOW30516 (Exhibit 64)**

**Documents IFLOW30553 – IFLOW30556 (Exhibit 62)**

**Documents IFLOW0012052 – IFLOW0012055 (Exhibit 110)**.

The Motion to Seal is **DENIED** as to these documents.

**IT IS SO ORDERED.**

_____
**DON J. SVET**
**United States Magistrate Judge**